### J. L. SPRAGINS *v.* M. T. RUSSELL ET AL.

[Abstract Kentucky Law Reporter, Vol. 4—255.]

**Inadequate Consideration.**

While inadequate consideration will not invalidate a sheriff's sale, when it is grossly inadequate, it will be considered by the chancellor in determining the question of fraud raised.

Validity of Sheriff's Sale.

> Where a sheriff's sale of real estate is alleged to have taken place in 1872 and no conveyance was made thereunder until 1877, long after the sheriff had gone out of office, and there is no record or evidence of it showing the sale except the recital in the sheriff's deed and no record showing that the sheriff ever made any return on the execution if one was issued, the recitals in such a deed are not evidence, as against the owner, that any sale was made. And where less than fifteen years have elapsed since such alleged sale no presumption will arise that the officer did his duty and the burden is on the defendant to show that the plaintiff's title has been divested.

## APPEAL FROM LINCOLN CIRCUIT COURT.

### September 23, 1882.

OPINION BY JUDGE PRYOR:

Pinkney Spragins died in Lincoln county in the year 1868, leaving a last will. At the time of his death he owned a farm of one hundred twelve acres of land upon which he resided and a smaller tract of fifty acres not far distant. Under his will his wife took an estate for life in the land and the appellant the remainder. In May, 1872, one W. J. Russell caused an execution to be levied on the interest of the appellant in the one hundred twelve acres devised to him by his father, and about the same time execution for a smaller amount that had been transferred from the quarterly to the circuit court in favor of White and others was levied on the fifty acres, the tract being described as containing eighty acres. These executions were returned levied on the two tracts of land as stated, but the sale if made was under a venditioni that seems to have issued, but whether it ever found its way into the hands of the sheriff is a matter of much doubt. On the 14th of October, 1872, it is claimed that the two tracts of land were sold and purchased by M. T. Russell, who had purchased before the time the execution issued in favor of W. J. Russell. A conveyance was made by the sheriff to him in May, 1877. His debt and the two smaller debts amounting to near $400, constituted the consideration paid or agreed to be paid by Russell for the land. It seems that at the date of the alleged sale the appellant was out of the state and in ignorance of the fact that his land had been

sold.  After the death of his mother, the life tenant, which oc-
curred in 1878, the appellant, by himself or agent, took posses-
sion of the land and ascertaining the cloud upon his title filed
his petition in equity to cancel the conveyance made by the
sheriff to Russell and a mortgage made by Russell to one Tim-
othy Hardin who is also made a defendant.  He alleges that no
levy or sale was made of his land and that the sheriff and exe-
cution purchaser combined together for the purpose of defraud-
ing him.  It is manifest from the proof that the land of the ap-
pellant worth from $3000 to $4000 was conveyed by the sheriff
to M. T. Russell in consideration of his paying, or agreeing to
pay the indebtedness amounting to $300 or $400.  That the
price was grossly inadequate must be conceded and while this
fact will not invalidate the sale it must necessarily be consid-
ered by the chancellor in disposing of the questions raised.  The
sale is alleged to have taken place in October, 1872, but no con-
veyance was made by the sheriff until May, 1877, more than
four years after the alleged sale and long after the sheriff had
gone out of office; nor is there any evidence of record showing
this sale except the recital in the conveyance of May, 1877, made
by the sheriff.  These recitals are not evidence as against the
appellant that any sale was made, and while a possession and
claim under such a conveyance for the period of fifteen years
would authorize the presumption that a sale had been made and
that the officer had discharged his duties, no such presumption
can arise in this case and the burden is on the appellees to show
that the appellant has been divested of title.  That a levy was
made is, we think, established, but the execution upon which
the return is made is found in the office with no other return
upon it, and the only evidence of the sale and the steps neces-
sary to authorize it is found in the oral statement of the bene-
ficiaries in the execution and the payment by Russell of one of
the small debts.

Whether a sale can be made after the return of the execution
without a venditioni is, we think, not a question necessary to be
determined here.  The Gen. Stat. (1881) Ch. 38, Art. 5, § 3, pro-
vides that "An officer may at any time after tne return day,
while the original execution is in his hands, sell any property
taken in virtue thereof, provided the levy was made before the
return day"; but conceding such a right to exist with the sheriff,

there is no evidence of the sale either under the original writ or the venditioni, but that fact established alone by the statements of those who are the beneficiaries. Oral testimony might be introduced to establish the identity of the land sold where such an issue was raised by reason of an imperfect return, or to aid the return of sale where a combination to defraud is alleged as in this case between the sheriff and the purchaser. Here there is no record of the fact either by the sheriff's return or otherwise (except the deed) that a sale was made, nor any record evidence of an appraisement, advertisement or bond for the purchase-money; and while such irregularities as a failure to advertise, to take bonds, or to appraise the property will not affect the purchaser, still it is plain the sale must be established as a matter of record, and if the return is lost that fact must be made to appear and the loss supplied in a proper mode before the purchaser can be said to be invested with title. The sheriff and those whoever it is said appraised the land are dead, and with so many irregularities in the action of the sheriff, if he acted at all, and an entire absence of any record or the loss of any paper, evidence of the sale, we perceive no reason for withholding the relief asked by the appellant. It does not appear that the sheriff ever had a venditioni in his hands or that he made any return of a sale of the land in any manner, and under such circumstances the presumption will not be indulged that the sheriff did his duty. Hardin, who claimed to hold as mortgagee and as purchaser, is in the same condition as Russell. If Russell had no title he has none and besides, the recitals in the conveyance remanded him to the records where he could inspect the title. He could have seen that the deed was made by the sheriff more than four years after the alleged sale and for a trifling sum compared with the actual value of the land; that no return had been made on the execution, or evidence of record showing that a sale had been made. He was required as a prudent man to look to the judgment execution and sale under it, and when making the investigation would have ascertained that no evidence was to be found of any sale made to his vendor, so if he claims to occupy the position of an innocent purchaser, for the reason that his vendor acquired title, when a reasonable inquiry would have enlightened him as to the nature of the title, such a defense can not avail and in a court of equity he occupies no

better position than his vendor. The gross inadequacy of price, connected with the lapse of time intervening between the alleged sale and the conveyance by the sheriff, the absence of all record proof as to the preliminary steps required to be taken by the sheriff before the sale and no return whatever evidencing the sale present such a state of case as would authorize the conclusion that a wrong had been done the appellant; and if not, the facts of this record show a want of title in the purchaser and equity demands that the relief sought should be granted and a cancellation of the several conveyances and mortgage, and a further judgment subjecting the land to the payment of the executions with the interest thereon, and the costs of these actions, the judgment to be indorsed in behalf of the mortgagee, Hardin, who should be held entitled by reason of his mortgage to the proceeds of the sale.

Judgment *reversed* and cause remanded with directions to enter a judgment in conformity with this opinion.

*Welsh & Saufley, W. H. Miller, Geo. R. McKee, for appellant.*
*Hill & Alcorn, J. S. & R. W. Hocker, for appellees.*